IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>CARLO JOSEPH TOLEDO,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS<br><br><br><br>Case No. 2:07-CR-913 TS |

This matter comes before the Court on Defendant's Motion to Suppress Evidence.[1] Defendant filed the Motion on June 30, 2008. The Court held an evidentiary hearing on the Motion on October 3, 2008, and Defendant filed his Memorandum in Support of his Motion to Suppress on October 27, 2008.[2] The government filed its response on November 10, 2008.[3] Defendant filed a reply brief on November 17, 2008.[4] Defendant requested opportunity for additional oral argument,

---

[1]Docket No. 16.

[2]Docket No. 32.

[3]Docket No. 33.

[4]Docket No. 34.

1

and such a hearing was held on December 8, 2008. This matter is now ready for decision by the Court. For the reasons discussed below, the Court will deny the Motion to Suppress.

## I.  FACTUAL BACKGROUND

On October 15, 2007, Salt Lake City Police Officers Flores and Wall were patrolling in the area of 1700 South and State Street. They observed a young man they knew enter and then exit a nearby home (the "Residence"). The young man rode his bike away from the house, made an illegal lane change, and was stopped by Flores and Wall. The young man told Flores and Wall that he had visited the Residence to check on an elderly female friend who was ill. Flores and Wall released him and decided to conduct a welfare check to determine if the elderly, ill female was okay.

Approaching the Residence, Flores and Wall knocked on the front door. A young male opened the door, saw Flores and Wall, uttered an expletive, and shut the door. Flores and Wall heard the door lock, commotion from within the home, and footsteps running away from the front door. Flores and Wall exited the front yard, and moved to the side of the home, which was a public alley, and which contained a side exit from the Residence. Arriving in the alley, Flores and Wall observed a woman running away from the Residence, across the alley toward a garage. Flores and Wall called for backup, and then gave chase, apprehending her within minutes. The woman ("Ms. X") informed Flores and Wall that she had been at the Residence to buy drugs. She also said that those inside the Residence had told her that the cops were there and she needed to run.

Other uniformed officers arrived; some assisted with the woman, some went to the front of the Residence, and some accompanied Flores and Wall to the side entrance to the Residence. Wall knocked on the side door multiple times, identifying himself as law enforcement. Several minutes later, Esther Toledo exited the Residence by the side door into the alley, leaving the door to the

Residence open. Wall first spoke with Ms. Toledo and directed her to talk to Flores. Ms. Toledo indicated to Flores that she lived in the Residence.

While Flores spoke with Ms. Toledo, Wall stood next to the open door to the Residence. He testified at the October 3, 2008 hearing that his experience in law enforcement indicated that if there were drugs being sold at the Residence, as stated by Ms. X, that there were likely also firearms present. He testified that he stood by the open door to the Residence, watching inside, as a safety precaution. From the side door, Wall could see only a small alcove area and part of a kitchen area. While observing these areas, Wall saw a small closet door slowly open, revealing an adult male within the small space, later identified as Jonny Toledo ("Jonny T"), starting to crawl out. Wall drew his weapon and ordered Jonny T to lie on the floor. Jonny T complied, and Wall entered the Residence sufficiently to grab Jonny T and pull him to the outside, where Wall and other officers put handcuffs on Jonny T.

Flores glanced over and saw Wall extricating Jonny T from the Residence. Flores asked Ms. Toledo whether there were any other people in the Residence and she said there were a few. Wall asked Ms. Toledo if officers could go inside to check and Ms. Toledo said yes. At that point, Flores left Ms. Toledo and Jonny T, who was now in the custody of Wall, and he and other officers entered the Residence and found a number of other individuals in the house, including the Defendant. While in the Residence, Flores observed in plain sight a small plastic bag containing a green leafy substance which Flores recognized as marijuana. A search warrant obtained later led to the discovery of additional controlled substances and firearms.

## II. DISCUSSION

Defendant moves to suppress on the grounds that the police did not have consent to enter the Residence to apprehend Jonny T, nor were there exigent circumstances which would allow for a

warrantless search. Defendant also argues that, due to the circumstances immediately preceding Ms. Toledo's consent, that consent was not voluntary. Defendant also argues that officers entered the Residence to search prior to the consent allegedly granted by Ms. Toledo, and that Ms. Toledo's later consent did not remove the taint from the pre-consent search. The government argues that Wall's entrance into the Residence to apprehend Jonny T was justified by exigent circumstances and officer safety, and by the limited time and location of the entrance. The government also argues that only Wall's limited entrance into the Residence preceded consent by Ms. Toledo, and that all other officers entered to conduct a full search only after Ms. Toledo gave consent, making the search reasonable under the Fourth Amendment.

As a preliminary matter, the Court wishes to address arguments by defense counsel during the December 8, 2008 hearing regarding alleged inconsistencies by Wall and Flores. The Court finds that Officers Wall and Flores are credible witnesses, and the Court will rely on the veracity of the testimony offered by both officers.

A.   CONSENT TO SEARCH

Under the Fourth Amendment, a search conducted without a warrant is per se unreasonable, subject only to a few specifically established and well-delineated exceptions.[5] Defendant argues that the government's justification for entry into the Residence was that it was a protective sweep, pointing to the following testimony from Wall:

> I started to secure [Jonny T] until I could figure out what was going on. And as I was doing that, officers began, there was a lot of voices from the officers and that type of thing, but they entered through there to go in there which I believe at that time more

---

[5] *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).

4

than likely was going to do kind of a sweep of the area to make sure that there were not other threats in there for officer safety issues.[6]

Defendant cites *United States v. Walker*[7] for the doctrine that a protective sweep may take place only incident to arrest.[8] The record indicates that no arrest had been made when the search was undertaken, precluding a protective sweep. However, the government has consistently argued, in oral arguments and memoranda, that the search of the Residence was justified by the express consent of Ms. Toledo, and not as a protective sweep.

A search conducted pursuant to consent is a well-delineated exception to the rule that a warrantless search is unreasonable.[9] "Before a district court may admit evidence resulting from a consent search, it must determine from the totality of the circumstances that (1) the defendant's consent was voluntary and (2) the search did not exceed the scope of the consent."[10]

    1.    <u>Voluntariness</u>

"Valid consent is that which is freely and voluntarily given."[11] "Whether a defendant freely and voluntarily gave his consent to a search is a question of fact and is determined from the totality of the circumstances."[12] The government has the burden of showing that the consent was valid.[13]

---

[6]Tr. Ev. Hg. October 3, 2008 at 81:12-20.

[7]474 F.3d 1249 (10th Cir. 2007).

[8]*Id.* at 1254.

[9]*Schneckloth*, 412 U.S. at 219.

[10]*United States v. Gutierrez-Hermosillo*, 142 F.3d 1225, 1231 (10th Cir. 1998).

[11]*United States v. Pena*, 143 F.3d 1363, 1366 (10th Cir. 1998) (internal quotation marks and citations omitted).

[12]*Id.*

[13]*Id.*

"First, it must present 'clear and positive testimony that consent was unequivocal and specific and freely and intelligently given.'"[14] "Second, the government must show that the police did not coerce the defendant into granting consent."[15]

As Wall was removing Jonny T from the Residence, Flores asked Ms. Toledo if anyone was left in the Residence, to which she answered "yes." Flores testified that he then asked Ms. Toledo if the officers could enter the Residence to check and Ms. Toledo again said "yes." Defendant has offered no evidence to contradict Flores' testimony, and the Court finds that Ms. Toledo was unequivocal and specific in granting Flores and others consent to enter the Residence.

In determining whether a consent to search was free from coercion the "court should consider, *inter alia*, physical mistreatment, use of violence, threats, threats of violence, promises or inducements, deception or trickery, and the physical and mental condition and capacity of the defendant within the totality of the circumstances."[16] "An officer's request for consent to search does not taint an otherwise consensual encounter 'as long as the police do not convey a message that compliance with their request is required.'"[17]

As to the second issue, Defendant, in his reply brief, argues that Ms. Toledo's consent to search the Residence was not given voluntarily, due to the circumstances in which consent was given. Jonny T had just been pulled from the house by Wall, and had been placed into custody by Wall and others. Additionally, at no time was Ms. Toledo informed that she had the right to refuse

---

[14]*Id*. (quoting *United States v. Agulo-Fernandez*, 53 F.3d 1177, 1180 (10th Cir. 1995)).

[15]*Id*.

[16]*United States v. McCurdy*, 40 F.3d 1111, 1119 (10th Cir. 1994).

[17]*Id*. (quoting *United States v. Griffin*, 7 F.3d 1512, 1517 (10th Cir. 1993)).

consent. However, the record also reveals that Flores did not draw his weapon, did not touch Ms. Toledo, did not raise his voice during the encounter, made no promises or inducements, and did not engage in trickery or deception. The Court finds that there is simply nothing to indicate that Ms. Toledo was coerced into giving her consent. Notwithstanding the descriptive language used by Defendant in his reply memorandum, there is no evidence that the situation was "volatile," or that the apprehension of Jonny T could legitimately be considered a "melee."[18] Thus, based on the totality of the circumstances, the Court finds that Ms. Toledo's consent was freely and intelligently given and that it was not obtained by coercion.

    2.    <u>Scope of Consent</u>

"The scope of consent is a fact question based upon what a reasonable person would have understood under the circumstances."[19] "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical person have understood by the exchange between the officer and the suspect?"[20] "The scope of a search is generally defined by its expressed object"[21] and "is limited by the breadth of the consent given."[22] The Tenth Circuit has "consistently and repeatedly . . . held [that] a defendant's failure to

---

[18]Docket No. 34 at 6.

[19]*United States v. Gregoire*, 425 F.3d 872, 880 (10th Cir. 2005).

[20]*Florida v. Jimeno*, 500 U.S. 248, 251 (1991).

[21]*Id*.

[22]*United States v. McRae*, 81 F.3d 1528, 1537 (10th Cir. 1996) (citation omitted).

limit the scope of a general authorization to search . . . is an indication the search was within the scope of consent."[23]

The evidence before the Court indicates that Ms. Toledo was asked whether the police could search the house for additional individuals within the Residence, to which Ms. Toledo answered, "yes." There is no evidence that Flores went beyond the scope of that general consent. The Court therefore finds that the search which revealed evidence of marijuana, and led to the search warrant, was reasonable.

B.    PRE-CONSENT ENTRANCE

Defendant argues that Wall entered the Residence without consent when he apprehended Jonny T, and that doing so was an unreasonable search which tainted the later search by Flores and others. It is undisputed that Wall entered the Residence without consent, although the government argues that exigent circumstances and officer safety provide sufficient justification for a limited entrance into the Residence. While the Court agrees that the alleged presence of drugs in the Residence created a reasonable apprehension on the part of the police that firearms might also be present, the Court need not address the issue of whether Wall's initial entrance into the Residence was lawful because Defendant does not have standing to challenge Wall's initial entrance.

The government argues that Defendant does not have standing to challenge Wall's initial entrance because it did not "infringe on [Defendant's] personal fourth amendment interests."[24] "[T]he question is whether the challenged search or seizure violated the Fourth Amendment rights

---

[23] *United States v. Gordon*, 173 F.3d 761, 766 (10th Cir. 1999).

[24] Docket No. 33 at 7.

8

of a criminal defendant who seeks to exclude the evidence obtained during it."[25]  "[E]ven if the fourth amendment rights of a third party have been violated, a district court may not suppress evidence unless the defendant has met his burden of proving that the challenged search or seizure infringed on his personal fourth amendment interests."[26]

Wall entered the Residence for a brief period of time, sufficient only to extract Jonny T. Defendant argues that this was a Fourth Amendment violation, but fails to prove that the search was violative of anyone's rights other than Jonny T, a third party.  There is no evidence before the Court that Defendant was affected by Wall's limited initial search.  Moreover, no evidence was uncovered during that initial entrance by Wall that could be used against Defendant during trial, nor was any evidence discovered that contributed to the subsequent search, to which Ms. Toledo consented.  The Court finds that Defendant has failed to prove any injury and therefore lacks standing to challenge Wall's initial entrance into the Residence.

Defendant points to testimony offered at the October 3, 2008 evidentiary hearing, which could be interpreted to indicate that officers entered the Residence in connection with the seizure of Jonny T, prior to consent being granted by Ms. Toledo.[27]  However, Flores testified that "after she had given me consent, I myself and other officers went inside to see if there was any other individuals hiding."[28]  The Court finds that Flores' testimony is not contradicted by the passages

---

[25] *Rakas v. Illinois*, 439 U.S. 128, 140 (1978).

[26] *U.S. v. Dodds*, 946 F.2d 726, 728 (10th Cir. 1991).

[27] *See* Tr. Ev. Hg. October 3, 2008, at 58:3-4 ("there was other officers that came to that side door to assist Officer Wall); 81:14-17 ("As I was [handcuffing on Jonny T], officers . . . entered through [the side door] . . . ."); 97:19-25 (officers entered the Residence as Wall was taking Jonny T into custody).

[28] *Id.* at 33:15-17.

9

cited by Defendant. The record shows that Wall extricated Jonny T from the Residence, and that once outside, other officers assisted in placing him into custody. Flores testified that as Wall began shouting at Jonny T, Flores looked in the direction of the Residence, and then returned his focus to Ms. Toledo, asking for consent to enter the Residence, which consent was given.[29] Thus, while officers entered the Residence shortly after Wall emerged from the Residence with Jonny T, the Court finds that they did so only after Flores had obtained consent from Ms. Toledo. Ms. Toledo gave consent to Flores during the time that Wall was extricating Jonny T, and the Court finds that any seeming ambiguities in Wall's testimony are a result of the fact that Wall was simply not aware of the consent given to Flores.

### III.  CONCLUSION

For the foregoing reasons, it is therefore

ORDERED that Defendant's Motion to Suppress (Docket No. 16) is DENIED. It is further

ORDERED that the time from the filing of the Motion to Suppress through the date of the new trial setting is excluded from the computation of the Speedy Trial Act time pursuant to 18 U.S.C. § 3161(g)(1)(F) and (J). Trial will be reset by separate notice.

DATED   December 9, 2008.

BY THE COURT:

TED STEWART
United States District Judge

---

[29] *Id.* at 32:7-14.